Evan Selik (SBN 251039)
Christine Zaouk (SBN 251355)
McCATHERN LLP
523 West Sixth Street, Suite 830
Los Angeles, California 90014
(213) 225-6150 / Fax (213) 225-6151
eselik@mccathernlaw.com
czaouk@mccathernlaw.com

Cody J. Shaver (SBN 319362)
SHAVER LEGAL, APC
4473 Main Street
Riverside, California 92501
Phone: (800) 672-4159
Fax: (951) 848-9489
cshaver@shaverlegal.com

Attorneys for Plaintiff,
VELIA MINJARES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VELIA MINJARES, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>AMGUARD INSURANCE COMPANY, a Pennsylvania corporation, authorized to do business in California, et al.,<br><br>Defendants. | Case No. 5:21-cv-00798 JWH (SHKx)<br>*[Assigned to Judge John W. Holcomb]*<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Complaint Filed: May 5, 2021<br>Trial Date: November 14, 2022. |

# **TABLE OF CONTENTS**

Pages

I. INTRODUCTION………………………………………………………......1

   A. Summary of Facts Supported by Evidence ……..…………………...……1

II. SUMMARY OF JUDGMENT STANDARD ……………………………...3

III. AMGUARD IGNORED ITS OWN HIRED ADJUSTERS COVERAGE RECOMMENDATION AND DENIED THE CLAIM …………….…………4

IV. THE ENTIRE WATER LOSS SHOULD HAVE BEEN COVERED UNDER THE POLICY ……………………………………………………… 4

   A. The Policy Covers for Sewer Water that Overflows from a Plumbing System ……………………………………..……………..4

   B. The Policy Covers for Damage Caused by an Onsite Overflow……………………………………………………………8

V. CONTENTS ARE COVERED FOR WATER THAT ESCAPES FROM A    PLUMBING SYSTEM PURSUANT TO THE POLICY LANGUAGE…………………………………………………………..9

VI. AMGUARD RELIANCE ON CASES PERTAINING TO BACK UPS ARE INAPPLICABLE TO COVERAGE AFFORDED HERE……………………………………………………10

VII. CONCLUSION…………………………………………………………..11

McCATHERN LLP
523 West Sixth Street, Suite 830
Los Angeles, CA 90014
(213) 225-6150

# TABLE OF AUTHORITIES

Page(s)

**CASES:**

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242, 255 (1986)……………………………………………………….……………4

*Cardio Diagnostic Imaging, Inc. v. Farmers Ins. Exchange*
212 Cal.App.4th 69 (2012)……………………………………………………………8, 10

*Celotex Corp. v. Catrett*, 477 U.S.
317, 322 (1986)…………………………………………………………………………….3

*GGIS Ins. Services, Inc. v. Superior Court*
168 Cal.App.4th 1493 (2008)……………………………………………………………...8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
475 U.S. 574, 586–87 (1986)……………………………………………………………….3

*Maxim Tselevich v. Allstate Insurance Company*
WL 505075 (2015)………………………………………………………………………….11

*Mirpad, LLC v. California Ins. Guarantee Assn.*
132 Cal.App.4th 1058, 1072 (2005)……………………………………………...……..9

*Penn-America Ins. Co. v. Mike's Tailoring*
125 Cal.App.4th 884 (2005)………………………………………………………………...11

*Pharm. Rsch. & Manufacturers of Am. v. David*,
WL 22473 (E.D. Cal. Jan. 4, 2021)………………………………………………………..4

*State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell*
138 F.3d 772, 780 (9th Cir. 1998)………………………………………………………….3

**Statutes**

Fed. R. Civ. P. 56(a)………………………………………………………………………..3

McCATHERN LLP
523 West Sixth Street, Suite 830
Los Angeles, CA 90014
(213) 225-6150

McCATHERN LLP
523 West Sixth Street, Suite 830
Los Angeles, CA 90014
(213) 225-6150

## I. INTRODUCTION

### A. Summary of Facts Supported by Evidence

Plaintiff, Velia Minjares, lives at 1502 N. Ash Avenue, Rialto, CA 92376 (hereinafter the "Property"). On February 14, 2020, the Plaintiff returned home and found a large amount of water had overflowed from the toilets due to a soft blockage within the plumbing system of the Property. The water was identified as contaminated water by the plumber which substantiated that the water contained fecal matter and other harmful contaminants. [Joint Ex. 6]. The water had flowed from the bathrooms to the kitchen, laundry room, living room, and hallways of the Property. This was a substantial water loss suffered which resulted in nearly an inch of water on the ground. The water had saturated the flooring, cabinets, walls and appliances. The Plaintiff immediately notified their insurer, AmGuard Insurance Company ("AmGuard") and retained a plumber to remedy the blockage contained in the plumbing system. Plaintiffs also promptly retained a mitigation company who removed the visible water and dried out the affected building components to ensure that proper mitigation was completed as to avoid further damages to the Property as required under the policy of insurance.

The Claim was assigned to Charles Diskin of AmGuard who in turn retained a licensed insurance field adjuster, Anssi Viljanen, to inspect the Property and provide a recommendation as whether the claim was covered under the insurance policy and, if so, the required repairs of the loss. [Joint Ex. 500, p. 315]. Viljanen inspected the

Property on February 28, 2020. *Id*. Viljanen investigated the claim and provided his recommendation that the loss was covered under the policy, policy number VEHO074427 (the "Policy"). [Joint Ex. 500, p. 316]. Viljanen determined that since the water originated onsite and that there was no change in direction of water flow, that the loss was an overflow from the on-premises plumbing system. *Id.* Viljanen noted that there was a limitation of coverage under the Policy for water that backs up through a plumbing system however, since water did not change direction, it was not a backup but an overflow. [Joint Ex. 500, p. 317].

As a result of the investigation by Viljanen, as he was the only person provided by AmGuard to perform an inspection and investigate the facts of the loss, Viljanen determined that the loss was a covered event and recommended to AmGuard that the insurance policy affords coverage for both the dwelling damage and personal property damage. [Joint Ex. 500, p. 317].

Later, Viljanen was advised that AmGuard denied the loss despite the recommendation from Viljanen. [Joint Ex. 500, p. 317]. Viljanen was surprised that the claim was denied based upon his investigation of the facts that it should have been covered. *Id.*

AmGuard later modified its position and afforded limited coverage for the building portion of the loss and cited that the loss caused by a backup of a sewer and coverage was limited to $5,000.

///

AmGuard acknowledged that the loss was caused by an overflow however, AmGuard refused to identify why coverage was not granted up higher limits pursuant to coverage for an overflow of a plumbing system when the limiting language AmGuard applied pertained to a backup of a sewer.

## II.   SUMMARY JUDGMENT STANDARD.

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. Fed. R. Civ. P. 56(a); *State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, *supra* at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed

before the court must be drawn in favor of the opposing party. *Pharm. Rsch. & Manufacturers of Am. v. David*, WL 22473 (E.D. Cal. Jan. 4, 2021) citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

### III. AMGUARD IGNORED ITS OWN HIRED ADJUSTERS COVERAGE RECOMMENDATION AND DENIED THE CLAIM

The Motion must be denied based on the fact that AmGuard's own hired adjuster who inspected the property found coverage and AmGuard's in-house adjuster ignored it. [Joint Ex. 500, pp. 315 – 318]. This alone creates genuine dispute of material facts about: (a) the loss originating onsite; (b) the water being sewage water; (b) the water intruding the house due toilet overflows (c) about why AmGuard did not cover the damage to Plaintiff's personal property; (e) to there being no change in direction of the water flow.

### IV. THE ENTIRE WATER LOSS SHOULD HAVE BEEN COVERED UNDER THE POLICY

#### A. The Policy Covers for Sewer Water that Overflows from a Plumbing System

The Policy clearly covers for the sewage water that overflowed from the plumbing system of the Property. Regardless, a genuine dispute of material facts exists as to the bad faith nature in which AmGuard ignored facts here to limit coverage to only $5,000.

In the Policy, under "Perils Insured Against", the following language is found: [Joint Ex. 500 pp. 308 – 314].

> *"SECTION I – PERILS INSURED AGAINST*
> *A. Coverage A – Dwelling And Coverage B – Other Structures*
> > *1. We insure against direct physical loss to property described in Coverages A and B.*
> > *2. We do not insure, however, for loss:*
> *. . . .*
> *c. Caused by:*
> *. . . .*
> *(6) Any of the following:*
> > *(a) Wear and tear, marring, deterioration*
> > *(b) Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself"*

No coverage for exists for water that escapes from a plumbing system exists, as this was caused either by wear and tear of the pipe or a mechanical breakdown. *Id.* However, the Policy provides an ensuing loss provision:

> *"Exception To c.(6)*
> *Unless the loss is otherwise excluded, we cover loss to property covered under Coverage A or B resulting from an accidental discharge or overflow of water or steam from within a;*
> > *(i)   Strom drain, or water, steam or sewer pipe. Off the "residence premises; or*
> > *(ii)  Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises," but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or*

> *steam causes actual damage to a building on the "residence premises".*
>
> *We do not cover loss to the system or appliance from which this water or steam escaped.*
>
> *For the purpose of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a. roof drain, gutter, downspout or similar fixture or equipment.*
>
> *Section I Exclusion A.3. Water, Paragraphs a and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under c.(5) and (6) above."* Id.

This ensuing loss provision specifically provided coverage for water that escaped from a plumbing system unless the water is otherwise excluded. Therefore, absent any specific exclusion, there is coverage for water that escapes or <u>overflows</u> from a plumbing system such as what occurred at the Property. *Id.*

The exclusions that limit the ensuing loss provision are as follows:

> *"SECTION I – EXCLUSIONS*
>
> *. . . .*
>
> *3. Water*
>
> *This means:*
>
> *a. Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind including storm surge.*
>
> *b. Water which:*
>
>> *(1) Backs up through sewers or drains; or*
>>
>> *(2) Overflows or is otherwise discharged from a sump, sump pump or related equipment;*

> ***c. Water below the surface of the ground, including water which experts pressure on, or seeps, leaks or flows through a building. Sidewalk, driveway, patio, foundation, swimming pool or other structure . . ."***

*Id.*

Exclusion 3, water, under section b, water that backs up through sewers or drains is excluded. However, going back to the exception to c. (6), provided that not all of this exclusion applies to the ensuing loss provision:

***"Section I Exclusion A.3. Water, Paragraphs a and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under c.(5) and (6) above."*** *Id.*

The language above states that only paragraphs a. and c. are excluded under the ensuing loss provision. Those paragraphs are for flood, surface water, and water below the surface of the ground. Therefore, under the ensuing loss provision that water which escapes or overflows from a plumbing system is covered unless it is surface water or water below the surface of the ground. Neither occurred to Plaintiff's water loss. The result of this is that water that overflows from a plumbing system is covered under the ensuing loss provision and is not limited by the water exclusion.

The Policy does not limit coverage under the ensuing loss provision for water that overflows from a plumbing system. Regardless, a genuine dispute of material facts exists as to the bad faith nature in which AmGuard ignored facts here to limit coverage to only $5,000.

Policy language is ambiguous if it is susceptible to more than one reasonable interpretation in the context of the policy as a whole. Any ambiguity is resolved in favor of the reasonable expectations of the insured. *GGIS Ins. Services, Inc. v. Superior Court* 168 Cal.App.4th 1493 (2008).

### B. The Policy Covers for Damage Caused by an Onsite Overflow

The Policy provides separate terms for "back up" and "overflow" which shows that the terms have a separate meaning under the Policy as provisions granting coverage refer to an "overflow" while limitations of coverage refer the term "back up".

The exception to the wear and tear exclusion c. (6), provides coverage for water resulting from an <u>accidental discharge</u> or <u>overflow</u> of water or steam from within a plumbing system. The term "overflow" is important as it is used to grant coverage under the Policy while the term used in the exclusionary language is "backs up", two distinctive separate words used in the same Policy.

In *Cardio Diagnostic Imaging, Inc. v. Farmers Ins. Exchange* 212 Cal.App.4th 69 (2012), a similar issues arose as to the terms "backup" and "overflow" in the same exclusion. The court determined that the policy there:

> "[u]nambiguously makes a distinction between water that backs up from a sewer or drain and water that overflows from a sewer or drain. Given the 'fundamental principle that policy language be so construed as to give effect to every term' we must interpret Water Exclusion # 3 in a way that gives meaning to both 'backs up' and 'overflows.' Under the policy at issue here, there is also the use of the same terms however, the exclusion only applies to

water that "backs up" while coverage is afforded for water that "overflows". *Id* at 74-75 citing *Mirpad, LLC v. California Ins. Guarantee Assn.*, 132 Cal.App.4th 1058, 1072 (2005).

The facts show that the water did not back up but rather overflowed from a plumbing system and there was no change in direction and therefore, the loss was identified by AmGuard's own adjuster as an overflow, not a backup. Nonetheless, a genuine dispute exists as to such facts.

## V. CONTENTS ARE COVERED FOR WATER THAT ESCAPES FROM A PLUMBING SYSTEM PURSUANT TO THE POLICY LANGUAGE

The Policy specifically provides coverage for contents that are damaged as a result of "accidental discharge or overflow of water or steam" from within a plumbing system. Coverage for contents located within the Property are covered under Section B of the Policy at page 10. [Joint Ex. 1, p. 10]. The language of the Policy provides the following at page 11 of 24:

*"12. Accidental Discharge Or Overflow Of Water Or Steam*

*a. This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.*

*d. Section I – Exclusion A.3. Water, paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.* [Joint Ex. 1, p. 11 – 24]."

The water here escaped from a plumbing system which is covered. Therefore,

even if one were to believe that an "overflow" and a "backup" were one in the same, coverage would still apply as the above language specifically states that coverage is only limited by paragraphs a. and c. that apply to surface water and water below the surface of the ground.

### VI. AMGUARD RELIANCE ON CASES PERTAINING TO BACK UPS ARE INAPPLICABLE TO COVERAGE AFFORDED HERE

AmGuard cites to *Cardio Diagnostic Imaging, Inc. v. Farmers Ins. Exchange* 212 CalApp.4th 69 (2012) for some support. In *Cardio*, a business brought an action against a commercial insurer when a toilet overflowed due to a blockage in the properties plumbing system. The carrier denied coverage citing that coverage is not afforded under the policy for either a back up or an overflow. The court in *Cardio* specifically addressed the language that is at issue here, "back up" and "overflow" and its opinion supports the position of Plaintiff here. The exclusionary language in *Cardio* cited the following: "backs up and overflows from" a sewer or drain".

As discussed herein above, the court in *Cardio* made a distinction that there is a difference between water that overflows from a sewer or drain and water that backs up from a sewer or drain however, the *Cardio* policy for the exclusion cited both an overflow and a backup and therefore, coverage was negated.

The language is not the same in the Policy at issue here. The Policy at issue specifically provides coverage for an overflow from a plumbing system while it only limits coverage for a backup. The term "overflow" is not found in the exclusionary

language here.

AmGuard also relies on *Maxim Tselevich v. Allstate Insurance Company* WL 505075 (2015). In *Maxim*, a property was damaged as a result of the city sewer system, not on onsite plumbing system as at issue here. The *Maxim* court made a distinction between water that "backs up" and that which "overflows". *Id* at 74. Similar to this case.

Here, not only would the layperson interpret the terms differently, but the person who inspected the loss identified there as being a difference between the terms as well. [Joint Ex. 500, pp. 316-317]. The facts of this loss, water overflowing from a toilet as a result of an onsite blockage more readily fits with the definition of an "overflow" as described in *Maxim*.

AmGuard also relies on *Penn-America Ins. Co. v. Mike's Tailoring* 125 Cal.App.4th 884 (2005). In that case, there was a commercial policy that did not have an ensuing loss provision such as the matter here. *Id* at pp. 574-575. The facts in *Penn-America* are not the same as the policy in *Penn-America* did not have a coverage provision providing coverage or water that overflows from a plumbing system such as the issue here. As such it is inapplicable here.

**VII. CONCLUSION**

There are clear genuine factual issues that exist that as to where the water originate from and how it intruded the property for a jury to deliberate about. Furthermore, the facts that AmGuard ignored its own onsite adjuster's

recommendation that Plaintiff's loss as covered allows a jury to determine if such conduct was unreasonable for bad faith purposes under the breach of implied covenant of good faith and fair dealings. As such, this Motion should be denied.

Date: September 12, 2022                                McCATHERN LLP

                                              By: *Evan Selik*
                                              _____
                                              EVAN SELIK
                                              CHRISTINE ZAOUK
                                              Attorneys for Plaintiff,
                                              VELIA MINJARES