1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

11  VELIA MINJARES, an individual,          Case No. 5:21-cv-00798-JWH-SHK

12              Plaintiff,                   **ORDER GRANTING**
                                            **DEFENDANT'S MOTION FOR**
13          v.                              **SUMMARY JUDGMENT [ECF**
                                            **No. 28]**
14  AMGUARD INSURANCE
        COMPANY, a Pennsylvania
15      corporation, authorized to do
        business in California; and
16  DOES 1 through 100, inclusive,

17              Defendants.

18

19

20

21

22

23

24

25

26

27

28

The instant dispute between Plaintiff Velia Minjares and Defendant AmGUARD Insurance Company centers on a property insurance policy (the "Policy") and its exclusion of water damage (the "Exclusion").  The key issue is whether the Exclusion applies to water backups or overflow that occurred on Minjares's real property (the "Property") in Rialto, California.[1]  It does.  Accordingly, after considering the papers filed in support of and in opposition to AmGUARD's instant motion for summary judgment,[2] the Court orders that AmGUARD's Motion is **GRANTED**.

## I.  BACKGROUND

### A.    Factual Background

The Property was covered by AmGUARD insurance policy VEHO-074427.[3]  On February 14, 2020, Minjares discovered that the Property was flooded with water coming from a clogged toilet and a kitchen sink.[4]

That same day, Minjares hired non-party Ricardo Plumbing to address the flooding.  Ricardo Plumbing inspected the Property and noted that the kitchen, the hallway, and both bathrooms were flooded with sewage; the backup caused a

---

[1]    *See generally* Compl. (the "Complaint") [ECF No. 1-2].

[2]    The Court considered the following papers:  (1) Complaint (including its attachments); (2) Def.'s Mot. for Summ. J. (the "Motion") (including its attachments) [ECF No. 28]; (3) Pl.'s Opp'n to the Motion (the "Opposition") [ECF No. 30]; (4) Def.'s Reply in Supp. of the Motion (the "Reply") [ECF No. 29]; (5) Def.'s *Ex Parte* Appl. to Strike Pl.'s Untimely Opp'n (the "Application") (including its attachments) [ECF No. 31]; (6) Decl. of Evan Selik in Opp'n to Def.'s the Application (the "Selik Declaration") [ECF No. 32]; and (7) Def.'s Reply Br. in Supp. of the Motion (the "Supplemental Reply") [ECF No. 42].  The Court finds this matter appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15.

[3]    Complaint ¶¶ 7 & 8.

[4]    Joint Statement of Undisputed Facts and Genuine Disputes (the "Joint Statement") [ECF No. 28-1] ¶¶ 9 & 10.

1  so-called "Category 3" flood.[5]  Ricardo Plumbing then fixed the main line

2  backup caused by soft stoppage and cleared the line that same day.[6]

3      Minjares submitted a claim to her insurance company—AmGUARD—for

4  sewage water loss.[7]  Minjares hired non-party Reliance Property Damage

5  Consultants ("Reliance") as her representative to adjust the loss.[8]  AmGUARD

6  assigned the claim to adjuster Charles Diskin, and Diskin then began working

7  with Reliance.  Reliance provided AmGUARD with photos of the Property and a

8  repair estimate of $64,973.30, along with a copy of the emergency service

9  invoice for $8,962.11.[9]

10      Separately, AmGUARD retained an independent claim adjuster, non-

11  party Eberl Claim Service ("Eberl"), to inspect the Property.  Two weeks after

12  the flood, Eberl's adjuster Anssi Viljanen inspected the Property with Reliance's

13  adjuster Cody Shaver.[10]  In its report, Eberl stated that the Category 3 loss was

14  caused by a toilet overflow, which, in turn, stemmed from a soft stoppage.[11]

15  Eberl's report also noted that technicians had identified the toilet overflow due

16  to a soft stoppage and had successfully cleared the line.[12]

17      The next month, Diskin (*i.e.*, AmGUARD's adjuster) and Shaver (*i.e.*,

18  Minjares's adjuster) reached an impasse regarding the policy limit for the

19  Property.  Diskin contended that the claim had a limit of $5,000;[13] Shaver

---

[5]  *Id.* at ¶ 14.
[6]  *Id.*
[7]  *Id.* at ¶ 18.
[8]  *Id.* at ¶¶ 21-23.
[9]  *Id.* at ¶¶ 26 & 27.
[10]  *Id.* at ¶¶ 29 & 30.
[11]  *Id.* at ¶ 32.
[12]  *Id.* at ¶ 33.
[13]  *Id.* at ¶ 36.

disagreed with Diskin's interpretation of the Policy's language.[14]  Two months later, AmGUARD issued Minjares a check for $5,000 as part of its final determination of Minjares's policy coverage.[15]

**B.    Procedural Posture**

Minjares filed her Complaint in state court in February 2021, asserting two claims against AmGUARD for breach of contract and breach of the implied covenant of good faith and fair dealing.[16]  In May 2021, AmGUARD removed this action to this Court under 28 U.S.C. § 1332.[17]  In August 2022, AmGUARD filed the instant Motion for summary judgment.[18]  Minjares failed to file her Opposition on time—as required by L.R. 7-9 (directing that oppositions are due no later than 21 days before a scheduled hearing).  AmGUARD filed its timely Reply in September 2022, in which it noted that Minjares failed to file a timely opposition.[19]  Three days later, Minjares finally filed her Opposition to the Motion.[20]

AmGUARD filed an *ex parte* Application the next day in which it asked the Court to strike Minjares's untimely Opposition.[21]  Minjares opposed AmGUARD's Application through a declaration from her counsel, Evan Selik.[22]  The Court declined to strike Minjares's Opposition, but it did grant AmGUARD leave to file a Supplemental Reply.[23]

---

[14]    *Id.* at ¶¶ 37 & 38.
[15]    *Id.* at ¶ 44.
[16]    *See* Complaint.
[17]    Not. of Removal [EFC No. 1] 2:6-10.
[18]    *See* Motion.
[19]    *See* Reply 1:25-2:7.
[20]    *See* Opposition.
[21]    *See* Application.
[22]    *See* Selik Declaration.
[23]    *See* Order Denying the Application (the "Application Order") [ECF No. 36]; Supplemental Reply.

## II.  LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).  When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party.  *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991).  However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).  The substantive law determines the facts that are material.  *See id.* at 248.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.*  Factual disputes that are "irrelevant or unnecessary" are not counted.  *Id.*  A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

Under this standard, the moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.  *See id.* at 325.  Instead, the moving party need only prove there is an absence of evidence to support the nonmoving party's case.  *See id.*; *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  The party seeking summary judgment must show that "under the governing law, there can be but one reasonable conclusion as to the verdict."  *Anderson*, 477 U.S. at 250.

If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. *See Celotex*, 477 U.S. at 324.  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence." *Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 252).  The non-moving party must make this showing on all matters placed at issue by the motion as to which it has the burden of proof at trial.  *See Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 252.

Furthermore, a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  "The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."  Advisory Committee Notes, 2010 Amendment, to Fed. R. Civ. P. 56.  Reports and declarations in support of an opposition to summary judgment may be considered only if they comply with Rule 56(c), which requires that they "be made on personal knowledge, set forth facts that would be admissible evidence, and show affirmatively that the declarant is competent to testify to the matters stated therein." *Nadler v. Nature's Way Prod., LLC*, 2015 WL 12791504, at *1 (C.D. Cal. Jan. 30, 2015); *see also Loomis v. Cornish*, 836 F.3d 991, 996–97 (9th Cir. 2016) (noting that hearsay statements do not enter into the analysis on summary judgment).

# III. DISCUSSION

## A. Breach of Contract

Minjares asserts that AmGUARD breached the insurance contract by failing to indemnify her for covered losses to her Property.[24] Under California law, the interpretation of an insurance policy is a question of law decided under settled rules of contract interpretation. *See State v. Continental Ins. Co.*, 55 Cal. 4th 186, 195 (2012). The elements of a breach of contract claim are as follows: (1) the existence of a valid contract; (2) plaintiff's performance or excuse for failure to perform; (3) defendant's breach; and (4) damages. *See McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1489 (2006); *see also Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010). The insured bears the burden of establishing that the claim is within the basic scope of coverage. *See MacKinnon v. Truck Insurance Exchange*, 31 Cal. 4th 635, 648 (2003).

It is undisputed that the parties here have a valid contract.[25] The Policy that AmGUARD issued to Minjares was in effect at the time of the damage to the Property, and there is no indication that Minjares failed to pay or that she otherwise failed to perform under the contract. The only issue is whether AmGUARD breached the contract by limiting Minjares's claim to $5,000 under the Policy's Limited Water Back-Up and Sump Discharge or Overflow Coverage (Form HO 04 95 01 14) (the "Endorsement").[26]

### 1. Application of the Water Damage Exclusion

AmGUARD argues that there is no coverage under the Policy's property coverage in view of the Water Damage Exclusion.[27] The Policy contains

---

[24] Complaint ¶ 32.
[25] Joint Statement ¶ 1.
[26] *Id.* at ¶ 7.
[27] Motion 15:24-25.

1  "Homeowners 3—Special Form (Form HO 00 03 05 22)," which excludes
2  water that:  (1) backs up through sewers or drains; or (2) overflows or is
3  otherwise discharged from a sump, sump pump, or related equipment.[28]

4            **a.**          **The Policy's Limited Water Backup Endorsement**

5       The parties disagree whether the Endorsement modifies the Policy.
6  AmGUARD argues that while the Policy does not provide water damage
7  coverage in view of the Exclusion, Minjares's Policy Endorsement provides for
8  limited water backup coverage.[29]  The Endorsement recites a coverage limit of
9  $5,000 for losses related to water originating "from within the dwelling where
10  you reside and backs up through sewers or drains."[30]

11       Minjares disagrees with AmGUARD's assessment.  Instead, Minjares
12  asserts that unless the loss is otherwise excluded, damage from accidental
13  discharge or overflow of water or steam is covered if it originates from within:
14  (1) storm drains, or water, steam or sewer pipes, off the residence premises; or
15  (2) plumbing, heating, air conditioning or automatic fire protective sprinkler
16  system or household appliance on the residence premises.[31]  For the purpose of
17  this provision, a plumbing system or household appliance does not include a
18  sump, sump pump, or related equipment.[32]  Minjares acknowledges the Policy
19  Water Damage Exclusion that AmGUARD cites, but she avers that it applies

20
21

22  [28]    Joint Statement ¶¶ 4 & 5.  Minjares purports to dispute those statements
23  of fact by pointing to separate portions of the contract, but Minjares has merely
identified a legal dispute concerning contract interpretation.  As such, the
objection is **OVERRULED**.

24  [29]    Motion 24:8-13.

25  [30]    Joint Statement ¶¶ 6-8.  Again, Minjares purports to dispute those
26  statements of fact by pointing to separate portions of the contract, but Minjares
has merely identified a legal dispute concerning contract interpretation.  As
such, the objection is **OVERRULED**.

27  [31]    Opposition 5:1-6:10.

28  [32]    *Id.*

only to flood, surface water, and water below the surface of the ground according to Section I Exclusion A.3.[33]

AmGUARD responds that Minjares is wrong about the exception. Looking to the Joint Exhibit list and the Policy itself, the Court agrees with AmGUARD that the Water Damage Exclusion applies to the Property without exception. In the lead-in section to the Water Damage Exclusion, the Policy states:

> We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.[34]

The Court concludes that that language is unambiguous when applied to the Endorsement, which explicitly provides that "[t]he Water Exclusion is replaced" by removing the exclusion for backups or overflows and instead providing $5,000 in coverage for this type of water damage.[35] Put differently, without the Endorsement, Minjares would recover nothing on account of water damage due to the Policy's exclusion. The Endorsement grants coverage for water damages, but it limits Minjares's recovery to $5,000.

### b. Water Damage Exclusion Case Law

In addition to noting the unambiguous nature of the Policy's language, AmGUARD cites several instructive cases in which California courts have held that policy exclusions—like the Water Damage Exclusion at issue here—bar coverage for losses stemming from backups and overflows.[36] In *Penn-Am. Ins.*

---

[33]   *Id.* at 7:5-23.
[34]   Joint Exhibit [ECF No. 28-2] 38.
[35]   *Id.* at 55.
[36]   Motion 17:11-27.

*Co. v. Mike's Tailoring*, 125 Cal. App. 4th 884 (2005), a California appellate court reversed a trial court that held that the text "water that backs up from a sewer or drain" must be given its unambiguous and common-sense interpretation. *Id.* at 886. After the property of the insured in *Penn-Am. Ins. Co.* experienced a blockage in a sewer pipe, the property was flooded with sewage. *Id.* at 888. That court defined "back up" as follows:

> The dictionary definition of "back up" is an intransitive verb meaning "to accumulate in a congested state. . . ." (Webster's New Collegiate Dict. (1979) p. 82.) It also means "to rise and flow backward or overflow adjacent areas . . ." such as "water checked by an obstruction." (Webster's 3d New Internat. Dict. (1971) p. 160.)
>
> These definitions accurately describe what happened in this case.

*Id.* at 892-93. Much like the instant action, the backup exclusion in *Penn-Am. Ins. Co.* prevented the plaintiff from recovering from the ensuing loss from water damage. Minjares attempts to distinguish *Penn-Am. Ins. Co.* with a conclusory assertion that the plaintiff's policy there "did not have a coverage provision providing coverage or [*sic*] water that overflows from a plumbing system such as the issue here,"[37] but Minjares ignores the fact that her Policy here limits coverage to $5,000—which AmGUARD paid.[38]

A recent decision from a court in this District similarly concluded that an insurer's indemnity was limited because the insurance policy's water damage exclusion controlled its coverage. In *McCaughey v. Ohio Sec. Ins. Co.*, 2021 WL 2548689 (C.D. Cal. Apr. 2, 2021), the plaintiff's property suffered water damage from blockage in the sewer system. *Id.* at *2. The plaintiff's policy had a $10,000 endorsement for backups, but it otherwise excluded water damage. *Id.*

---

[37]   Opposition 11:18-23.

[38]   Joint Statement ¶ 8.

Because the policy's water damage exclusion precluded coverage for water damage caused by an overflowing toilet and the defendant paid out the full policy limit of the endorsement, the court granted the defendant's motion for summary judgment on the plaintiff's breach of contract claim. *Id.* at *7.

### 2. The Viljanen Declaration

Minjares also asserts that summary judgment is improper because the adjuster that AmGUARD hired recommended to AmGUARD that the Property should be covered by the Policy. Minjares argues that that recommendation alone creates genuine dispute of material fact regarding the Policy's coverage.[39] Specifically, Anssi Viljanen—Eberl's independent insurance adjuster—inspected the Property and stated that "the water came from toilet overflow as a result of a soft blockage."[40] Viljanen recommended to AmGUARD adjuster Diskin that the loss should be covered under the policy because the water originated onsite and it was an overflow under the Policy.[41]

Viljanen was aware of a policy provision that limited water damage claims if the water backs up through a plumbing system.[42] Viljanen testified that "it was clear that the plumber determined that the water in which damaged [*sic*] the property was continuously introduced into a plumbing system that had a blockage, which created an overflow, not a backup."[43] Viljanen then stated, "I also recommended . . . that the insurance policy affords coverage for contents that are affected by an accidental discharge or overflow of water or steam."[44]

---

[39]   Opposition 4:7-16.
[40]   Joint Exhibit 315 ¶ 5.
[41]   *Id.* at 316 ¶ 9.
[42]   *Id.*
[43]   *Id.*
[44]   *Id.* at 317 ¶ 10.

Viljanen concluded his declaration by testifying that he was surprised to learn that AmGUARD denied the claim, because "any independent insurance adjuster who discovered such facts as I did through investigating this claim, would find that the insurance policy provided coverage for Ms. Minjares' claim."[45]

AmGUARD was unable to respond to that alleged contested fact in its Reply because Minjares's Opposition was untimely. But in its Supplemental Reply, AmGUARD objects to this fact on multiple grounds: (1) the statement is not based upon the Joint Statement of Undisputed Facts and Genuine Disputes, but, rather, it cites to Viljanen's Declaration in the Joint Exhibit;[46] (2) Viljanen's declaration contains inadmissible hearsay because it includes purported telephone discussions with Diskin;[47] (3) AmGUARD did not deny Minjares's claim, but it provided coverage to the Endorsement's limit;[48] and (4) both Viljanen's and Diskin's opinions are irrelevant, as the Court must interpret the contract as a matter of law on summary judgment.[49] AmGUARD's arguments prevail.

First, the Court's Standing Order provides that: "The parties must cite to the factual statement set forth in the Joint Statement in their respective briefs . . . . Citations found in the briefs to any individual exhibits or the Joint Exhibits will be disregarded."[50] Here, Minjares filed her Opposition after the deadline set by L.R. 7-9, and she failed to include her own set of undisputed facts. Although the Court could have stricken Minjares's Opposition, instead it

---

[45]     *Id.* at 317 ¶ 11.

[46]     Supplemental Reply 10:16-22.

[47]     *Id.* at 10:23-26.

[48]     *Id.* at 11:9-10.

[49]     *Id.* at 11:12-14.

[50]     Standing Order [EFC No. 24] 7:7-11.

-12-

addressed Minjares's violation of the Local Rules by permitting AmGUARD to file a Supplemental Reply.[51]  "The district court has considerable latitude in managing the parties' motion practice," and the Court may refuse to consider filings that do not comply with standing orders or local rules.  *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002) (upholding a district court's disregard of a party's supplemental filings that did not adhere to Local Rules and stating that "[a]t some point, enough is enough"); *see also Ashton–Tate Corp. v. Ross*, 916 F.2d 516, 520 (9th Cir. 1990) (noting that "the process of evaluating a summary judgment motion would be flouted if requests for more time, discovery, or the introduction of supplemental affidavits had to be considered even if requested well after the deadline set for the introduction of all information needed to make a ruling has passed").

Minjares's late-filed Opposition and her failure to include Viljanen's declaration in the Joint Statement are sufficient grounds to disregard the facts that Minjares raises.  But even if the Court were to consider Viljanen's declaration, it would not change its decision.  AmGUARD is correct that opinion evidence is irrelevant in the Court's contract interpretation.  *See Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995) (holding that the interpretation of an insurance contract is a legal question and not a factual determination); *Chatton v. Nat'l Union Fire Ins. Co.*, 10 Cal. App. 4th 846, 865 (1992) ("Consistent therewith, it has been held that opinion evidence is completely irrelevant to interpret an insurance contract."); *Prudential Ins. Co. of Am. v. Superior Ct.*, 98 Cal. App. 4th 585, 598–99 (2002) (holding that it is well established that "[t]he opinions of claims adjusters or other agents or employees of the insurer are also inadmissible to interpret an insurance contract").

---

[51]     *See* Application Order.

-13-

Furthermore, Viljanen's declaration does not create a disputed issue of material fact.  Neither party contests that a soft blockage led to the Property's flooding and consequent water damage.[52]  Additionally, it is uncontested that the Eberl report stated that the "[c]ause of loss [was] toilet overflow . . . due to soft stoppage."[53]  Although Viljanen testified that he thought that the policy covered the water damage, his conclusion does not create a factual dispute because AmGUARD ultimately agreed and paid Minjares the amount owed under the Exclusion.[54]

Summary judgment is **GRANTED** to AmGUARD on Minjares's breach of contract claim.

## B.   Implied Covenant of Good Faith and Fair Dealing

AmGUARD also moves for summary judgment on Minjares's claim for breach of the implied covenant of good faith and fair dealing.  The elements of a claim for breach of the covenant of good faith and fair dealing are as follows: "(1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990).  Here, it is undisputed that AmGUARD issued a payment to Minjares for $5,000—the full limit of her coverage under the Endorsement.[55]

As discussed above, the Water Damage Exclusion precludes additional coverage for water damage to the Property, and Minjares cannot establish that she is entitled to additional benefits under the Policy.  Because no benefits under the policy have been withheld, this claim fails as a matter of law.  *See OneWest Bank v. Houston Cas. Co.*, 676 F. App'x 664, 666 (9th Cir. 2017) ("Because [the

---

[52]   Joint Statement ¶ 14.

[53]   *Id.* at ¶ 33.

[54]   *Id.* at ¶ 44.

[55]   *Id.*

insured] cannot establish that [the insurer] has withheld benefits due under the policy, its implied-covenant claim must fail as a matter of law."); *Victoria Fam. Ltd. Liab. Ltd. P'ship v. Ohio Sec. Ins. Co.*, 475 F. Supp. 3d 1106, 1118 (S.D. Cal. 2020) ("Because no benefits beyond what [the defendant] has already paid are due under the Policy, the implied covenant of good faith and fair dealing claim fails as a matter of law.").  The Court therefore **GRANTS** the Motion with respect to Minjares's second claim under the implied covenant of good faith and fair dealing.

### IV.  CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.     AmGUARD's Motion for summary judgment is **GRANTED**.

2.     Judgment shall issue accordingly.

**IT IS SO ORDERED.**

Dated:___February 21, 2023___                    _____

John W. Holcomb
UNITED STATES DISTRICT JUDGE